# IN THE COURT OF APPEALS OF IOWA

No. 20-0639
Filed October 6, 2021

**ZACHARY PAUL HUBER,**
    Plaintiff-Appellant,

**vs.**

**IOWA DISTRICT COURT FOR POLK COUNTY,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan,

Judge.

Zachary Huber appeals the extension of a no-contact order prohibiting him

from contacting his former spouse. **WRIT ANNULLED**.

Nathan A. Mundy of Mundy Law Office, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant

Attorney General, for appellee.

Heard by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**SCHUMACHER, Judge.**

Zachary Huber appeals the extension of a no-contact order prohibiting him from contacting his former spouse. Huber contends the district court erred in finding he failed to meet his burden of proving he no longer posed a threat to his former spouse, the protected party. Huber also argues the court improperly considered his motives for resisting the extension, as well as considering the nature of the events leading to his conviction. We find the district court appropriately considered Huber's motives as they related to his credibility. The district court did not err in considering the events leading to Huber's conviction, nor did it err in finding he failed to meet his burden of proof. Accordingly, we determine the writ should be annulled.

I.      **Background Facts & Proceedings**

The facts of the case are not in dispute. Huber was convicted by a jury of domestic abuse assault, in violation of Iowa Code section 708.2A(2)(a) (2015), in 2015.[1] The trial court imposed a five-year no-contact order under Iowa Code section 664A. The no-contact order prohibited Huber from contacting his former spouse and prevented Huber from possessing firearms or ammunition. Huber and his former spouse had divorced before the conduct that led to his conviction. They have two children together. The no-contact order did not alter his visitation rights under the divorce decree. It is uncontroverted that Huber did not seek to exercise his visitation rights provided for in the decree. Additionally, Huber did not attempt

---

[1] Huber was acquitted on charges of sexual abuse in the third degree, domestic abuse assault causing bodily injury, and false imprisonment.

contact with the protected party during the period the no-contact order was in effect. He did possess ammunition in violation of the order.

The State moved to extend the no-contact order for an additional five-year term pursuant to Iowa Code section 664A.8 prior to the expiration of the order. Huber resisted the motion. Following hearing, the district court found that Huber had not proven he was no longer a threat to the protected party. In particular, the court found that Huber's lack of credibility led to concerns he would seek to contact the protected party in the future. The court also noted the nature of the events leading to Huber's conviction and his violations of the order by possessing ammunition. The district court granted the extension of the no-contact order for a period of five years. Huber appeals.

## II.    Jurisdiction

The State contends Huber's appeal should be dismissed for lack of jurisdiction under Iowa Code section 814.6. Ordinarily, the State's position would be correct. Section 814.6 limits the right of appeal to "a final judgment of sentence." An extension of a no-contact order is collateral to the underlying criminal proceeding. *Vance v. Iowa Dist. Ct.*, 907 N.W.2d 473, 479-80 (Iowa 2018). Thus, Huber has no right of direct appeal. *Id.* However, our supreme court treated Huber's notice of appeal as a petition for writ of certiorari, and the supreme court granted the writ of certiorari. As a result, we may consider Huber's appeal. *See* Iowa R. App. P. 6.108; *Vance*, 907 N.W.2d at 481.

## III.    Standard of Review

We review the district court's extension of the no-contact order for correction of errors at law. *State v. Petro*, No.16-1215, 2017 WL 1735894, at *2 (Iowa Ct.

App. May 3, 2017).  The district court's factual findings are binding on us if those facts are supported by substantial evidence.  *Id.*  Substantial evidence exists "if reasonable minds could accept it as adequate to reach the same findings."  *Id.* (citation omitted).  "Factual issues depending on witness veracity are best resolved by the district court, which has a better opportunity to evaluate credibility than we do."  *Id.* (citing *Claus v. Whyle*, 526 N.W.2d 519, 524 (Iowa 1994)).

## IV.    Analysis

Huber makes three arguments on appeal.  First, he alleges the district court erred in considering his motives for ending the no-contact order.  Second, he contends the court improperly considered the circumstances of his underlying conviction and charges for which he was acquitted.  Finally, he argues he met his burden of proving he no longer poses a threat to the protected party.

### A.  Huber's Motive for Ending No-Contact Order

Huber contends the district court erred by considering his stated reasons for wanting the no-contact order ended.  During the hearing on the extension request, Huber testified he wanted the order terminated because it prevented him from seeing his children.  The court found this undermined Huber's credibility because the order did not alter his visitation rights under the dissolution decree. The court ultimately found that Huber's testimony about how he had moved on in his life was suspect based on his lack of credibility.

Huber points to our supreme court's ruling in *Vance* to suggest that a district court cannot consider the impact of a no-contact order on the defendant.  That case noted that a district court "*need not* consider the defendant's needs or how he or she may be negatively affected by the extension of the no-contact order."

*Vance*, 907 N.W.2d at 482 (emphasis added). "Need not" is permissive language, not mandatory. *Vance* merely holds that the court does not have to consider the impact on the defendant; it does not place a complete prohibition on such a consideration.

Additionally, the court properly examined Huber's motives to judge his credibility. Our cases have repeatedly held that district courts may consider credibility when extending a no-contact order. *See Clark v. Pauk*, No. 14-0575, 2014 WL 6682397, at *4 (Iowa Ct. App. Nov. 26, 2014) ("The district court was entitled to credit [the protected party's] testimony over [the defendant's] testimony in deciding to extend the order."); *Doyle v. Doyle*, No. 13-0753, 2013 WL 6405474, at *2 (Iowa Ct. App. Dec. 5, 2013) (approving of the district court's determination that the defendant lacked credibility). Here, the court determined that Huber lacked credibility based on the implausibility of his stated reasons for resisting the extension.[2] The court further found Huber's testimony that he did not violate the no contact order lacked credibility, given his possession of ammunition. Based on that lack of credibility, the court questioned his intentions and his potential conduct

---

[2] The court explained its reasoning by noting, "The court finds this testimony [regarding how Huber wanted nothing to do with the protected party in the future] suspect given . . . his stated reason for resisting the extension based upon a condition that did not exist; [that] the no contact order precluded him from visiting his children."

if the order ended. We find no error in the district court considering Huber's motives for resisting the extension.

## B. Consideration of Prior Events

Huber finds error with the district court considering "the nature of the events leading to his criminal conviction." In particular, he contends the court used allegations of juror misconduct in his domestic abuse trial and the charges for which he was acquitted. To begin, we note that Huber offered no legal authority to support his contentions. As a result, we could consider the matter waived. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."). Because the matter may be resolved on the record, we consider it.

Huber's argument the court improperly penalized him for juror misconduct that occurred during his trial and the charges he was found not guilty of has little merit. The record belies this argument. The district court explicitly and repeatedly clarified during the hearing that it would not consider the charges that the defendant was found not guilty of.[3] Likewise, the court made it clear it would not consider the issue of jury misconduct.[4] Moreover, the written order does not mention jury misconduct at all. The record does not establish that the court relied on improper factors.

We interpret the court's statement as a reference to the underlying act that resulted in Huber's conviction for domestic abuse assault. Such a reading fits

---

[3] For instance, the court stated, "I'm not going to consider the charges that he was found not guilty of in terms of my consideration." Similarly, the court explained, "The verdict is what the verdict is . . . I'm calling that ancient history."

[4] "The issue of the jury misconduct has no bearing or meaning."

more closely with the court's words—the events leading to the *conviction.* Importantly, courts may use a defendant's history of abuse and the original act of domestic violence that caused a no-contact order to be put in place. *See Petro*, 2017 WL 1735894, at *3; *Wendt v. Mead*, No. 16-0928, 2017 WL 510972, at *2 (Iowa Ct. App. Feb. 8, 2017); *Sims v. Rush*, No. 10-0237, 2010 WL 3503943, at *3 (Iowa Ct. App. Sept. 9, 2010). The court did not err in considering the nature of the events leading to Huber's conviction.

### C. Huber's Burden

Huber broadly asserts, "The relevant statutory question of fact is whether Huber remains a threat." While true, it is merely a recitation of the rule found in Iowa Code section 664A.8. We interpret this to be a claim that Huber met his burden of proving he no longer poses a threat the protected party. Section 664A.8 requires the defendant to prove by a preponderance of the evidence that they no longer pose a threat to the protected party. *Vance*, 907 N.W.2d at 482. While district courts have broad discretion to consider relevant factors in making its determination, "the statute prioritizes the safety of the victims." *Id.*

As noted above, courts may consider the credibility of the parties. *Pauk*, 2014 WL 6682397, at *4. Similarly, courts may consider prior abuse and the underlying act that led to the imposition of the original no-contact order. *Petro*, 2017 WL 1735894, at *3. The protected party need not claim or prove that the defendant has violated an existing order. *Id.* Additionally, courts have extended orders simply on evidence by the protected party that they feared for their safety and the defendant acknowledged that fear was sincere. *Mead*, 2017 WL 510972, at *2. *But cf. Pauk*, 2014 WL 6682397, at *3 ("[T]repidation, standing alone, is not

enough to prove [the defendant] continues to pose a threat to [the protected party's] safety."). Finally, a professional statement can be enough on its own to support a district court's findings. *State v. Aguilar*, No. 14-1225, 2015 WL 5965076, at *4 (Iowa Ct. App. Oct. 14, 2015).

The district court found Huber lacked credibility based on his unconvincing reasons for resisting the extension. His lack of credibility made the court doubt his testimony that he would not contact the protected party in the future. The court factored in the nature of the assault that led to Huber's conviction.[5] The court also considered Huber's violation of the order by owning ammunition. The court found evidence from the State's professional statement that the protected party legitimately feared for her safety.[6] The evidence supports the court's finding that Huber failed to prove he no longer posed a threat to the protected party.

## V.    Conclusion

We find the district court appropriately considered Huber's motives as they related to his credibility. The district court did not err in considering the events leading to Huber's conviction, nor did it err in finding he failed to meet his burden of proof. Accordingly, we determine the writ should be annulled.

**WRIT ANNULLED.**

---

[5]The district court also noted uncontroverted testimony from the State's professional statement that, "there were events of 'stalking' by the defendant or through others that occurred prior to the criminal charges."

[6] Huber's attorney consented to the presentation of the State's position by professional statement.